## IOWA LIFE INSURANCE COMPANY v. EASTERN MUTUAL LIFE INSURANCE COMPANY.

### Argued March 2, 1899—Decided June 12, 1899.

A life insurance company of Iowa agreed with one of its agents that he should have a year's premiums on certain policies issued by it and should bear the year's losses. The agent further agreed to deposit with the company as security a sum equal to thirty per cent. of such premiums, but by a later arrangement there were substituted for such deposit policies of re-insurance issued by a life insurance company of New Jersey to the Iowa company. Afterwards these policies were repudiated by the New Jersey company and the contracts thereby evidenced were rescinded by the Iowa company. After the period of indemnity had expired the Iowa company sued the New Jersey company upon an implied *assumpsit* to repay the premiums recited in the policies of re-insurance as having been paid. *Held*, that in the absence of proof of any actual loss there could be no recovery.

On case certified from the Circuit Court of the county of Camden, as follows:

GARRISON, J.   Sitting as a trial court (a jury being waived) I find the following facts: That the Iowa Life Insurance Company had, in 1896, certain outstanding life policies, which collectively are called "The Gaffney Business;" that, in respect to these policies, the Iowa Life Insurance Company made a contract with one Harper (trading as "The Harper Agency," or whatever name is used in the testimony), by the terms of which Harper was to receive to his own use the whole of one year's premiums upon all of this block of policies, and was to pay any losses which during that year occurred upon the policies included in the "Gaffney Business," and for the security of the insurance company in this respect was to deposit with it a sum equal to thirty per cent. of the premiums so to be received by the Harper Agency; that Harper had an interview with Nixon, the president of the defendant company, in which Harper stated substantially the relation between his agency and the Iowa company, growing out of the terms of this contract, and his desire and purpose to substitute for the deposit of thirty per cent. mentioned in the contract, policies in Mr. Nixon's company that should reinsure all of the policies represented by the Gaffney business; that the defendant insurance company issued policies for reinsurance, as set forth in the bill of particulars of the plaintiff, which were in form as follows:

THE EASTERN MUTUAL LIFE INSURANCE COMPANY
OF CAMDEN, NEW JERSEY.

| Number | | Age |
|---|---|---|
| 1100 | BY THIS POLICY OF ASSURANCE. | 40 |
| Amount, | | Premium, |
| $1,300. | | 4.06. |

In consideration of four and 06-100 dollars, promises to pay to the Iowa Life Insurance Company as insurer, thirteen hundred dollars, upon proof that William M. Geyer, of Norristown, county of Montgomery, State of Pennsylvania, who is

insured in the Iowa Life Insurance Co., under policy No. 22,099, shall have died on or before the twentieth day of December, 1896. This insurance may be renewed by the payment of ten and 44-100 dollars on the fifteenth day of Dec. and June in each year hereafter for nine years.

The title to benefit, under this policy, is not assignable.

Signed at Camden, New Jersey, October 10th, 1896.

JER. S. NIXON,

EDWIN L. SEABROOK, *President.*
*Secretary.*

Which policies of re-insurance were delivered to Harper and by him delivered to the Iowa Insurance Company, who accepted them from Harper in lieu of the deposit of thirty per cent. of annual premiums; that by an agreement between the defendant insurance company and Harper the actual premiums to be paid to the defendant company for these policies were thirty per cent. of the gross premiums appearing on the face of the policies, *i. e.,* $3,446.92; that the policies were issued in October of 1896; that in December of 1896 a check or checks of Harper, equal to thirty per cent. of the gross premiums as they appear upon the books of the defendant company, were delivered to the defendant company and by them retained until after June 9th, 1897, undeposited, owing to Harper's request, and then were returned to Harper; that the defendant company never received in cash any part of the premiums connected with these policies.

I also find that Harper had no authority from the Iowa Life Insurance Company to represent it in this transaction, and that Harper had no agency in this regard by which to bind the Iowa Life Insurance Company; also that the transaction between Harper and the defendant company, with respect to re-insuring the Gaffney business, was known to the president of the Iowa Life Insurance Company and was done with the permission of the president of that company, and was afterwards acquiesced in by it; also that on the 9th day of June, 1897, the defendant company adopted a resolution in these words:

" Whereas, There was issued in 1896 certain policies of this company of re-insurance of certain risks of the Iowa Life Insurance' Company, being what was known as the Gaffney business, represented to have been owned at the time by the State Insurance Company of Philadelphia ;

"And whereas, The contract of re-insurance upon which said policies were issued was negotiated by the president and secretary of this company in disregard of the form of the act of March 8, 1877, relating to re-insurance, by reason whereof the same was and is illegal and the policies purported to be issued thereupon void ;

" Therefore, resolved, That the obligations of the said policies be and the same are hereby repudiated and declared to be of none effect. The officers of the company are instructed to notify of this action the Iowa Life Insurance Company, to whom said policies were delivered.

" Resolution · June 9, 1897."

And transmitted it to the Iowa Life Insurance Company ; also that the record in this court of an action brought upon one of the policies included in the Gaffney business, under the title of The Iowa Life Insurance Company *v.* The Eastern Mutual Life Insurance Company of Camden, N. J., was put in evidence and is as follows :

(The suit was begun in October, 1897. The defendant pleaded that the policy sued on was a contract of re-insurance made without the assent in writing of two-thirds in number of the holders of policies re-insured, and not submitted to be approved by the secretary of state of this state. On demurrer to this plea judgment was given in favor of the defendant.)

" Upon the foregoing special finding the defendant moved for the judgment upon the ground that no cause of action is shown ; the plaintiff moved for judgment for the amount of premiums mentioned in the last count of the declaration, viz., $3,446.92.

" How judgment should be given is a question reserved and certified to the Supreme Court for its advisory opinion.

" C. G. GARRISON,
"*Judge.*"

The present action was brought in contract. The pleadings have been certified. The declaration, framed in trespass on the case upon promises, originally comprised a count alleging that the premiums on the policies of re-insurance were paid by the plaintiff to the defendant and, on the repudiation by the defendant of those policies, became due to the plaintiff; and the common counts. At the trial there was added a count alleging liability to pay to the plaintiff $3,446 92 because Harper, on turning in to the plaintiff the policies afterward repudiated by the defendant, had been relieved from making his agreed deposit of that sum. The plea was the general issue.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON, LIPPINCOTT and COLLINS.

For the plaintiff, *Lewis Starr* and *Lindley M. Garrison.*

For the defendant, *Howard Carrow* and *Herbert A. Drake.*

The opinion of the court was delivered by

COLLINS, J. The statute referred to in the resolution adopted by the plaintiff provides as follows (*Gen. Stat., p.* 1755, *pl.* 66):

"That it shall not be lawful for any life insurance company, organized or to be organized under the laws of this state, to contract for the re-insurance of any of its outstanding risks or policy obligations of another company unless two-thirds in number of the holders of the policies proposed to be re-insured shall assent thereto in writing; and the contract for such re-insurance shall be utterly invalid and of no force until it shall have been submitted to the secretary of state of this state and by him approved, which he shall only do after due inquiry and upon satisfactory evidence that the interests of the policyholders are fully protected, and that the consent of two-thirds of them has been had in writing as aforesaid."

We are not called on to review the judgment on demurrer recited in the certified case. Both parties assume that because of non-compliance with the statute the policies issued by the defendant to the plaintiff were invalid; and whether so or not, the defendant's repudiating resolution and the present suit work their rescission. If invalid, the defendant was clearly under a duty to return any consideration received for them. *Smith* v. *Smith,* 4 *Dutcher* 208. Rescission has the same effect. The adjudged cases on this subject are collected in an article by Crosby Johnson, Esq., in 18 *Central Law Journal* 482, continued in volume 19, page 7.

The defendant recognized its duty to restore the consideration that it had received for the policies, and accordingly returned to Mr. Harper the checks he had given; but it is argued that the consideration moved really from the plaintiff to the knowledge of the defendant's officers, and that payment should have been made to the plaintiff and not to Harper. As a matter of fact no money passed and the certified case does not show that Harper's checks would have been honored if presented; but, for present purposes, it may be assumed that they were good and that the defendant's withholding them from deposit and turning them over to Harper were at its own risk, and it may be further assumed that the defendant was bound by the knowledge of its officers of the relation of the plaintiff to the transaction. Nevertheless the plaintiff would not be entitled to recover the recited premiums as the consideration paid by it for the policies. It paid nothing for them. It was argued, however, that a detriment to the promisee is sufficient consideration for any promise, and that upon a rescission such a detriment should be made good. What detriment did the plaintiff sustain? It merely gave up a right to exact from Harper as a fund of indemnity a deposit of thirty per cent. of the premiums due on its own policies. If the defendant had actually on hand in cash the premiums agreed to be paid by Harper, it would not, without his assent, be justified in paying them over to the plaintiff on a rescission of the policies of re-insurance. It is doubtful if

the equities of the parties can be settled in a legal forum; but it is clear that if the plaintiff has any cause of action at law against the defendant it is only for actual loss. *Ex æquo et bono,* it is entitled to no more. Each policy would have to be the subject of a separate action or count, and only to the extent of the premium received on that policy could the defendant be liable to make restoration. Within that limit, if the plaintiff should prove a loss, it is possible that it has, in some form as to that particular policy, a cause of action against the defendant. We will not prejudge that question. It is sufficient for the purposes of this case to say that although the time to be covered by Harper's indemnity had elapsed before the suit was brought, no loss to the plaintiff, on any policy that the defendant's officers assumed to re-insure, was proved at the trial, and therefore no liability was established.

The Circuit Court is advised to give judgment for the defendant unless, in its discretion, it shall permit the plaintiff to submit to a nonsuit.